**FILED**

MAR 1 2 2009

CLERK

### UNITED STATES DISTRICT COURT
### DISTRICT OF SOUTH DAKOTA
### SOUTHERN DIVISION

| | |
|---|---|
| RYAN BODDICKER, | CIV. 09- *4027* |
| Plaintiff, | **COMPLAINT** |
| vs. | |
| ESURANCE, INC, | |
| Defendant. | |

COMES NOW the Plaintiff, Ryan Boddicker, by and through his attorneys of record, and for his Complaint against the above-named Defendant, hereby states and alleges as follows:

### PARTIES

1.

Plaintiff Ryan Boddicker is a resident of Harrisburg, South Dakota.

2.

The Defendant, Esurance, Inc. is a subsidiary of White Mountains Insurance Group, Ltd., and is a duly licensed corporation under South Dakota laws. The Defendant is engaged in the sale of insurance policies, as well as the provision of service support for policy holders. Defendant's principle place of business is in Sioux Falls, South Dakota.

## JURISDICTION AND VENUE

3.

Plaintiff brings this action under the Family Medical Leave Act (FMLA), 29 U.S.C. § 2617 *et. seq.,* and the Uniformed Services Employment and Reemployment Rights Act (USERRA), 38 U.S.C. §§ 4301 *et seq.* This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question) because this civil action arises under the Constitution and laws of the United States.

4.

Venue is proper in this District Court pursuant to 28 U.S.C. § 1391. The Defendant resides in this District and the events giving rise to this action occurred in this District.

## FACTS

5.

Boddicker is a 34 year-old veteran who served our country in Iraq from February 2005 to January 2006. His military service forced him to be separated from his 6 year-old daughter and 3 year-old son.

6.

Boddicker's duty in Iraq involved protecting a port where the United States' Navy's ships unloaded large equipment.

7.

While serving in Iraq, Boddicker experienced a traumatic event that he believed would end his life. His children's lives flashed before him and he thought he would

2

never see them again.  Fortunately, Boddicker survived that day in Iraq, but he continues to suffer the effects of that experience.

8.

Shortly after this traumatic event, Boddicker began to suffer from acute anxiety and irritability.  This anxiety and irritability continued to haunt Boddicker when he returned home in early 2006.  His anxiety elevated to frequent and severe panic attacks.

9.

After months of uncertainty regarding his anxiety, irritability and panic attacks, Boddicker was diagnosed with Post Traumatic Stress Disorder (PTSD) in April 2007 as a result of his service in Iraq.

10.

Before Boddicker was deployed to Iraq in February 2005, he worked for the Defendant accepting inbound phone sales calls.  He worked for Defendant from August 9, 2004 through the time of his deployment on February 29, 2005.  He was working 40 hours per week and earning $9.50 per hour plus commissions before his deployment. The Defendant provided Boddicker with health insurance and disability benefits.

11.

Upon Boddicker's return to the United States, Boddicker resumed working 40 hours per week for the Defendant as a sales agent.

12.

After Boddicker was diagnosed with PTSD, he began the turbulent journey of finding the medication that would control his panic attacks, anxiety and irritability

3

without the side effects of rendering him lethargic, fatigued and unable to function normally.

13.

Boddicker informed the Defendant of his PTSD diagnosis and put his supervisors on notice that he would need to take FMLA leave on short notice when his symptoms flared up.

14.

He had little to no control over his PTSD symptoms from 2006 to September 2007. He and his psychiatrist were desperately trying to find the medication that would ease his PTSD symptoms and allow him to function normally.

15.

Shortly after Boddicker notified the Defendant he would be activating the rights afforded to him by the FMLA, the Defendant imposed conditions on his FMLA-protected leave that were not imposed on other employees taking FMLA leave.

16.

When Boddicker's PTSD symptoms flared up, he would need to take the day off or leave his shift to resolve his anxiety.

17.

The Defendant required Boddicker to call in to work before his shift was to begin and state that he was taking FMLA for the day. He was then required to call back in to the office to speak directly to one of his supervisors by 10:00 AM each day that he was unable to work to inform his supervisor whether he would be able to work the following day. This was not required of other employees taking FMLA leave.

4

18.

During these phone calls that Boddicker was required to make, his supervisors would ask him when he thought he would be able to return to work. On some occasions he was pressured to return to work. This pressure increased his anxiety and resulted in aggravating his PTSD symptoms.

19.

In August 2007, Boddicker had to leave work early due to PTSD symptoms. He took two weeks of FMLA-protected leave in an attempt to control his symptoms.

20.

When Boddicker returned to work from this two-week absence, he was required to meet with his supervisor, manager, and a human resources coordinator. During this meeting, Boddicker was informed that he could not utilize his FMLA leave in the manner in which he had been doing so. Specifically, the Defendant informed him that it "cannot have you calling in all the time" and "cannot have you getting up and leaving in the middle of your shifts."

21.

The day after this meeting, Boddicker again started experiencing extreme PTSD symptoms that prevented him from working. Boddicker took three weeks of FMLA leave.

22.

During the time Boddicker was attempting to work on his PTSD issues so that he could return to work, a member of the Defendant's Human Resources Department called him at home, and badgered him regarding when he would return to work, and suggested

that he should resign from his position with the Defendant.  This pressure from the Defendant only exacerbated Boddicker's symptoms to the point that he found his work environment intolerable.  After this telephone conversation, Boddicker determined that he could not return to work for the Defendant.

23.

The Defendant did not provide a termination letter or inform him of his right under the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA") to continue his health insurance and other benefits.

## **CAUSES OF ACTION**

### *COUNT I*
### *INTERFERENCE WITH PLAINTIFF'S RIGHTS UNDER THE FAMILY AND MEDICAL LEAVE ACT*

24.

Plaintiff realleges paragraphs 1-23 of this complaint and incorporates them as fully set forth herein.

25.

The Family and Medical Leave Act of 1993 (FMLA), 29 U.S.C. 2617 *et. seq.*, allows eligible employees of a covered employer to take job-protected, unpaid leave for up to a total of twelve (12) weeks in any (12) months because the employee's own serious health condition makes the employee unable to perform the functions of his or her job.

26.

At the time Plaintiff worked for the Defendant it employed more than fifty (50) employees for twenty (20) or more weeks. The Defendant is involved in industry or activity affecting commerce and is required to comply with the FMLA.

27.

Plaintiff was diagnosed with post-traumatic stress disorder (PTSD) as a result of a traumatic event he experienced while serving in the armed forces in Iraq. This condition is a serious health condition as defined in the FMLA.

28.

Plaintiff worked for the Defendant for at least twelve months and at least 1,250 hours in the 12-month period before he requested FMLA leave. Accordingly, he is an "eligible" employee under the FMLA and was entitled to at least twelve (12) weeks of job-protected, unpaid leave to care for and receive treatment for his serious health conditions.

29.

The Defendant interfered with Plaintiff's right to take FMLA leave for his serious health condition, in violation of the FMLA, 29 U.S.C. § 2615(a)(1).

30.

The Defendant's conduct in interfering with the Plaintiff's FMLA leave rights made his working conditions so intolerable that he was forced to resign. This conduct on behalf of the Defendant amounts to constructive discharge of the Plaintiff.

31.

The Defendant's interference with Plaintiff's FMLA leave caused him to suffer a loss of past and future wages and emotional distress for which the Defendant is liable under the FMLA. He is also entitled to recover his attorney's fees in this action.

### COUNT II
### RETALIATION AGAINST PLAINTIFF FOR EXERCISING HIS RIGHTS UNDER THE FAMILY AND MEDICAL LEAVE ACT

32.

Plaintiff realleges paragraphs 1-31 of this complaint and incorporates them as fully set forth herein.

33.

Plaintiff is protected under the FMLA and took approved FMLA leave.

34.

As a result of taking FMLA leave, the Defendant retaliated against the Plaintiff by making his work environment so intolerable that he had no choice but to resign his position. This conduct on behalf of the Defendant amounts to constructive discharge of the Plaintiff and thus constitutes adverse employment action in violation of FMLA, 29 U.S.C. § 2615(a)(2).

35.

The Defendant's illegal retaliation caused the Plaintiff to suffer a loss of past and future wages and emotional distress for which the Defendant is liable under the FMLA. He is also entitled to recover his attorney's fees in this action.

## COUNT III
### *Violation of the Uniformed Services Employment and Reemployment Rights Act (USERRA), 38 U.S.C. §§ 4301 et seq.*

36.

Plaintiff realleges paragraphs 1-35 of this complaint and incorporates them as fully set forth herein.

37.

The purpose of USERRA is to prevent, and to compensate uniformed service members for, employment discrimination based on military status.  38 U.S.C. § 4301 et seq.

38.

USERRA prohibits discrimination against employees because of their past, present, or future military service.  38 U.S.C. § 4311(a).

39.

USERRA also prohibits retaliation against anyone who has made a judicial, administrative, or internal complaint about a USERRA violation, assisted or participated in a USERRA investigation, or exercised a right under USERRA.  38 U.S.C. § 4311(b).

40.

Plaintiff is a member of the uniformed services protected by USERRA and all of its provisions.  38 U.S.C. § 4301 et. seq.

41.

Plaintiff's protected status or activity as a member of the uniformed services was a motivating factor in the challenged adverse employment action taken against him by the Defendant as set forth above.

42.

Plaintiff was denied the benefits of employment by the Defendant in violation of 38 U.S.C. § 4311.

43.

The Defendant's conduct alleged above was willful, entitling the Plaintiff to double back pay as liquidated damages.

### COUNT IV
*FAILURE TO ACCOOMMODATE A SERVICE-RELATED DISABILITY UNDER USERRA*

44.

Plaintiff realleges paragraphs 1-43 of this complaint and incorporates them as fully set forth herein.

45.

The Plaintiff suffers from a service-related disability within the meaning of USERRA in that he has PTSD as a result of his service in Iraq.

46.

The Plaintiff was qualified to perform the essential functions of his job with training and/or accommodation of his service-related disability.

47.

The Defendant failed to make reasonable efforts to train and/or accommodate the Plaintiff's service-related disability.

48.

Instead the Defendant constructively discharged the Plaintiff from his job on account of his service-related disability.

10

49.

The Defendant's conduct alleged above was willful, entitling the Plaintiff to double back pay as liquidated damages.

## COUNT IV
### VIOLATION OF COBRA

50.

Plaintiff realleges paragraphs 1-49 of this complaint and incorporates them as fully set forth herein.

51.

Defendant sponsored a group health plan for its employees, including Plaintiff, and is involved in industry or activity affecting commerce. Defendant employed twenty (20) or more employees for the year prior to Plaintiff's discharge in October 2007.

52.

Plaintiff was an eligible employee under COBRA.

53.

Plaintiff was constructively discharged by Defendant, and his FMLA leave expired in October 2007. Plaintiff was entitled to receive notification of the opportunity for a temporary extension of his health coverage after his employment with Defendant ended. Plaintiff did not, however, receive this required notification in violation of COBRA.

54.

Pursuant to 29 U.S.C. § 1132 and 29 U.S.C. § 1166, the Plaintiff is entitled to statutory damages in the amount of $100 per day from the date of the failure to give notice.

11

**WHEREFORE,** Plaintiff prays for damages against the Defendant as follows:

(1)     For Plaintiff's consequential damages, including but not limited to front pay, back pay, and other damages in an amount as the jury deems just and proper under the circumstances;

(2)     For double damages pursuant to 38 U.S.C. § 4323(d)(1)(C);

(3)     For all of Plaintiff's attorney fees, expert witness fees, and all fees, expenses, disbursements, and costs;

(4)     For any and all available statutory damages and remedies under USERRA, 38 U.S.C. § 4301 et seq., or other applicable federal statutes;

(5)     Statutory damages under 29 U.S.C. § 1132 and 29 U.S.C. § 1166 for failure to provide notice required under COBRA;

(6)     For prejudgment and postjudgment interest; and

(7)     For such further relief as the court determines is just and proper.

Dated this _____ day of March, 2009.

JOHNSON, HEIDEPRIEM,
ABDALLAH & JOHNSON, LLP

BY_____
Brendan V. Johnson
Shannon R. Falon
P.O. Box 2348
Sioux Falls SD 57101-2348
(605) 338-4304
brendan@jhajlaw.com
shannon@jhajlaw.com

*Attorneys for Plaintiff*

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.

_____
Brendan V. Johnson

12