UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | | |
|---|---|---|
| RYAN BODDICKER, | ) | CIV. 09-4027-KES |
| | ) | |
| Plaintiff, | ) | |
| | ) | ORDER GRANTING IN PART |
| vs. | ) | AND DENYING IN PART |
| | ) | DEFENDANT'S SUMMARY |
| ESURANCE, INC., | ) | JUDGMENT MOTION |
| | ) | |
| Defendant. | ) | |

Plaintiff, Ryan Boddicker, filed suit against defendant, Esurance, Inc., for violations of the Family Medical Leave Act (FMLA), the Uniformed Services Employment and Reemployment Rights Act (USERRA), and the Consolidated Omnibus Budget Reconciliation Act (COBRA). Esurance moves for summary judgment on all claims. Boddicker resists the motion on the FMLA and COBRA claims. The motion is denied in part and granted in part.

**BACKGROUND**

The facts, viewed in the light most favorable to Boddicker, the nonmoving party, are as follows:

Boddicker, a military veteran, worked at Esurance in Sioux Falls, South Dakota. The military recalled him to active duty in February of 2005. While on active duty, he experienced a traumatic event when he believed that some women approaching the area he was guarding carried explosives. After this event, he suffered panic attacks but finished his tour of duty. He

returned to Esurance as a sales agent in March of 2006. He continued to experience panic attacks and needed to be absent from work. He applied for and received intermittent FMLA leave from Esurance in April of 2007. In August of 2007, Boddicker informed Esurance that he suffered from Post Traumatic Stress Disorder (PTSD) and needed lengthier FMLA leave to deal with that disorder.

When Boddicker needed FMLA leave, Esurance required Boddicker to call in, speak to a supervisor, and explain why he needed leave. In October of 2007, Boddicker took extended FMLA leave. A supervisor called him at home and told him that he did not have to call in every day. During this conversation, the supervisor also asked Boddicker if he wished to resign. Boddicker declined to resign that day, but later resigned around October 22, 2007, and began working for a different employer.

While on active duty, Boddicker maintained a post office box in Sioux Falls. Esurance and Ceridian, Esurance's independent COBRA plan administrator, listed the post office box as Boddicker's permanent address in their records. In July or August of 2007, however, Boddicker changed his address and no longer maintained his post office box. Boddicker did not receive notice that he could extend his health care benefits under COBRA until after he filed this lawsuit, in March of 2008, because Ceridian sent the

notice to the post office box address. Boddicker claims that Esurance knew of his current address and did not inform Ceridian of the new address.

**STANDARD OF REVIEW**

Federal Rule of Civil Procedure 56(c)(2) provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Only disputes over facts that might affect the outcome of the case will preclude summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is not appropriate if a dispute about a material fact is genuine, that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.*

The moving party bears the burden of bringing forward sufficient evidence to establish that there are no genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The court views the facts "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (internal citation omitted). The nonmoving party also receives "the benefit of all reasonable inferences to be drawn from the underlying facts" in the record. *Vette Co. v. Aetna Cas. & Sur. Co.*, 612 F.2d 1076, 1077 (8th Cir. 1980) (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)).

Evidence based on inferences is acceptable in an employment discrimination case. *Crawford v. Runyon*, 37 F.3d 1338, 1341 (8th Cir. 1994). Because the court is especially deferential to plaintiffs who base their evidence on inferences, "summary judgment should seldom be used in employment-discrimination cases." *Id.*; *see also Lynn v. Deaconess Med. Center-West Campus*, 160 F.3d 484, 486-87 (8th Cir. 1998).

## DISCUSSION

### I. Family Medical Leave Act

The FMLA provides that an eligible employee may take twelve weeks of unpaid leave during any twelve-month period. 29 U.S.C. § 2612(a)(1). Congress, in enacting the FMLA, intended to provide job security for employees who must miss work because of their own illnesses or to care for qualified family members. 29 U.S.C. §§ 2612(a)(1)(A)-(D). Not only does the FMLA ensure that employees receive medical leave, but it is also an anti-discrimination statute. 29 C.F.R. § 825.220(c) ("The Act's prohibitions against 'interference' prohibit an employer from discriminating or retaliating against an employee . . . for having exercised or attempted to exercise FMLA rights"); *Nev. Dep't of Human Res. v. Hibbs*, 538 U.S. 721, 730 (2003) (expanding employment discrimination to FMLA claims).

The FMLA does not impose strict liability on employers. *Throneberry v. McGehee Desha Cnty. Hosp.*, 403 F.3d 972, 979 (8th Cir. 2005). Rather, an

employee must allege a claim of either interference or retaliation, also called the FMLA discrimination theory. 29 U.S.C. §§ 2615(a)(1), (2). The difference between interference and retaliation claims " 'is that the interference claim merely requires proof that the employer denied the employee his entitlement under the FMLA, while the retaliation claim requires proof of retaliatory intent.' " *Wisbey v. City of Lincoln, Neb.*, 612 F.3d 667, 675 (8th Cir. 2010) (quoting *Stallings v. Hussmann Corp.*, 447 F.3d 1041, 1051 (8th Cir. 2006)). Boddicker alleges both interference and retaliation claims.

## A. Interference Under the FMLA

Congress made it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under" the FMLA. 29 U.S.C. § 2615(a)(1).[1] This is commonly called the interference theory. *Throneberry*, 403 F.3d at 977. "In an interference claim, an 'employee must show only that he or she was entitled to the benefit denied.' " *Stallings*, 447 F.3d at 1050 (quoting *Russell v. N. Broward Hosp.*, 346 F.3d 1335, 1340 (11th Cir. 2003)). This is the "more employee-friendly" FMLA claim. *Russell*, 346 F.3d at 1340.

---

[1] Congress amended the FMLA in 2008 and new regulations were passed effective January 16, 2009. The court applies the FMLA and its regulations as they existed at the time the events leading to this action occurred in October of 2007. *See Thorson v. Gemini, Inc.*, 205 F.3d 370, 376 (8th Cir. 2000) (reasoning that new agency rules are generally not retroactive unless Congress gave that agency the express power to promulgate retroactive rules (citing *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988))).

5

### 1. Entitlement to an FMLA Benefit

As an initial matter, Esurance claims that while it granted Boddicker FMLA leave in April of 2007, it did not know that Boddicker suffered from PTSD until August 31, 2007. Boddicker responds that it is immaterial that Esurance did not know that he suffered from PTSD when it granted his FMLA request.

Whether an employee gave sufficient information to put the employer on notice of his need for FMLA leave is usually a question of fact for the jury. *Phillips v. Mathews*, 547 F.3d 905, 909 (8th Cir. 2008) (citing *Browning v. Liberty Mut. Ins. Co.*, 178 F.3d 1043, 1049 (8th Cir. 1999)). When Boddicker informed Esurance that he would be taking FMLA leave in April of 2007 for a serious medical need, he triggered Esurance's FMLA duties. *Kobus v. Coll. of St. Scholastica, Inc.*, 608 F.3d 1034, 1036-37 (8th Cir. 2010) ("[T]he employer's duties are triggered when the employee provides enough information to put the employer on notice that the employee may be in need of FMLA leave." (citing *Browning*, 178 F.3d at 1049)). Accordingly, because Esurance knew that Boddicker would be taking FMLA leave in April of 2007, even if it did not initially know that he suffered from PTSD, Boddicker was entitled to FMLA benefits.

### 2. Interference With an FMLA Benefit

Esurance contends that in order for Boddicker to have an actionable FMLA interference claim, he had to actually be denied his FMLA rights. Congress did not define what constitutes interference with an employee's FMLA rights. The Department of Labor has issued regulations under the FMLA and has clarified when an FMLA inference claim can be brought: "Any violations of the Act or of these regulations constitute interfering with, restraining, or denying the exercise of rights provided by the Act." 29 C.F.R. § 825.220(b). The regulations further define "[i]nterfering with" as "the exercise of an employee's rights [that] would include, for example, not only refusing to authorize FMLA leave, but discouraging an employee from using such leave." *Id.*

The Eighth Circuit also does not always require that an employee be denied FMLA leave before bringing an FMLA interference claim: "Interference includes 'not only refusing to authorize FMLA leave, but discouraging an employee form using such leave. It would also include manipulation by a covered employer to avoid responsibilities under FMLA.'" *Wisbey*, 612 F.3d at 675 (quoting 29 C.F.R. § 825.220(b)); *Stallings*, 447 F.3d at 1050 (same).

If an employee shows that his employer chilled the exercise of his FMLA rights, the employee may allege an interference claim: "When an employer attaches negative consequences to the exercise of protected rights,

it has 'chilled' the employee's willingness to exercise those rights because he or she does not want to be fired or disciplined for doing so." *Stallings*, 447 F.3d at 1050 (citing *Bachelder v. Am. W. Airlines, Inc.*, 259 F.3d 1112, 1124 (9th Cir. 2001)). In *Bachelder*, the Ninth Circuit reasoned that because the FMLA language of "interference with" and "restraint of" "largely mimics" language in the National Labor Relations Act (NLRA),[2] Congress looked to the NLRA in drafting the FMLA. *Bachelder*, 259 F.3d at 1123. "As a general matter, then, the established understanding at the time the FMLA was enacted was that employer actions that deter employees' participation in protected activities constitute 'interference' or 'restraint' with the employees' exercise of their rights." *Id.* at 1124.

The Eighth Circuit has favorably cited to *Bachelder* in finding that an interference claim can include the " 'chill' theory." *Phillips*, 547 F.3d at 914 (discussing *Bachelder*, 259 F.3d at 1124); *Stallings*, 447 F.3d at 1050 (discussing *Bachelder* and reasoning that a chilling of FMLA rights is sufficient for an FMLA interference claim); *Estrada v. Cypress Semiconductor (Minn.) Inc.*, 616 F.3d 866, 871 (8th Cir. 2010) (reasoning that interference "occurs when an employer's action deters or attaches negative consequences to an employee's exercise of FMLA rights." (citing 29 U.S.C. § 2615(a)(1))).

---

[2] "It shall be an unfair labor practice for an employer to interfere with, restrain, or coerce employees in the exercise of the right guaranteed in [the NLRA]." 29 U.S.C. § 158(a)(1).

Other circuits have adopted a similar chill theory for FMLA interference claims. *See, e.g., Conoshenti v. Pub. Serv. Elec. & Gas Co.*, 364 F.3d 135, 146-47 n.9 (3d Cir. 2004) (adopting the reasoning in *Bachelder*); *Smith v. BellSouth Telecomms., Inc.*, 273 F.3d 1303, 1313 (11th Cir. 2001) (reasoning that if a cause of action did not exist for employees for interference with their FMLA rights, employers would chill their employees' willingness to use their FMLA leave).

Esurance argues that none of its actions were intended to impede Boddicker's use of his FMLA rights. But an employer's intent is irrelevant in determining an interference claim. *Stallings*, 447 F.3d at 1050. Instead, the fact-finder objectively views the situation from the totality of the circumstances. *Murphy v. FedEx Nat'l Ltl.*, 618 F.3d 893, 901 (8th Cir. 2010) (employing a totality of the circumstances test in an FMLA case); *Scobey v. Nucor Steel-Ark.*, 580 F.3d 781, 787 (8th Cir. 2009) (same).

Boddicker claims that his FMLA rights were chilled by Esurance's call-in policy, by statements supervisor Shawn Uhlinger made to him after he took FMLA leave regarding his work getting behind, by the August 29, 2007, meeting that the supervisors held with Boddicker to discuss job performance improvement issues, and by supervisor Simpson's phone call in October of 2007 asking Boddicker if he wished to resign. The court will examine each claim separately.

9

Under the FMLA, "[a]n employer may require an employee to comply with the employer's **usual and customary notice** and procedural requirements for requesting leave." 29 C.F.R. § 825.302(d) (emphasis added). Esurance's policy permits departments to individually impose reasonable procedures for when an employee requests leave and Boddicker's department imposed a call-in requirement. Esurance argues that it did not violate the FMLA with the call-in requirement because all employees in Boddicker's group were required to call in when they were going to be absent. Boddicker suffered from PTSD and he offered evidence that requiring him to call in when he needed FMLA leave aggravated his disorder.

With regard to Uhlinger's comments, a supervisor's comments regarding an employee's taking FMLA leave can be actionable. *See Hite v. Vermeer Mfg. Co.*, 446 F.3d 858, 866 (8th Cir. 2006) (holding that a supervisor's comments that the employee would lose her job if she continued to take FMLA leave violated the FMLA). Esurance cites *Reilly v. Revlon, Inc.*, 620 F. Supp. 2d 524 (S.D.N.Y. 2009), and argues that Uhlinger's comments did not interfere with Boddicker's FMLA rights. The *Reilly* court held that the supervisor's comments must "have deterred an employee of ordinary firmness, in a situation similar to his, from requesting or taking FMLA leave" to constitute interference under the FMLA. *Id.* at 536 (citing *Golden v. New York City Dep't. of Envtl. Prot.*, No. 06 CIV. 1587, 2007

WL 4258241, at *3 (S.D.N.Y. Dec. 03, 2007)). Boddicker contends that Uhlinger's comments amounted to criticism and pressure and were meant to dissuade him from taking FMLA leave.

On August 29, 2007, Esurance supervisors held a meeting with Boddicker. Esurance claims the purpose of the meeting was to discuss how they could help him perform better. Esurance argues that it thought it might be facing an Americans with Disabilities Act (ADA) claim by Boddicker and that the ADA required this meeting. Esurance further contends that this meeting did not interfere with the FMLA because the company only sought to help Boddicker at work. Boddicker replies that his supervisors chastised him at the meeting.

Employers can hold meetings with employees to explore accommodations at work instead of taking FMLA leave and, under the ADA, are encouraged to do so. *See Fjellestad v. Pizza Hut of Am., Inc.*, 188 F.3d 944, 952 (8th Cir. 1999). Holding a meeting with an employee regarding his FMLA request does not per se violate the FMLA, but it can result in employer liability. *See, e.g.*, *Williams v. Ill. Dep't of Corr.*, No. 05-CV-4227, 2007 WL 2316473, at *3 (S.D. Ill. Aug. 13, 2007) (upholding a jury's verdict finding that an employer interfered with an employee's FMLA rights because of its conduct in a meeting).

While Boddicker was on extended FMLA leave in October of 2007, supervisor Simpson called Boddicker and, after informing him that he did not need to call in every day, asked if he wished to resign. Boddicker told Simpson he did not want to resign. Boddicker argues that Simpson's questioning whether he wanted him to resign is sufficient conduct to constitute interference.

After considering all the evidence put forth by Boddicker and viewing that evidence in the light most favorable to him, including all favorable inferences, the court finds that a reasonable jury could conclude that Esurance interfered with Boddicker's exercise of his FMLA rights by discouraging or chilling his exercise of those rights. Boddicker has alleged sufficient facts to show that genuine issues of material fact remain. Accordingly, summary judgment is denied on the FMLA interference claim.

**B.  Retaliation Under the FMLA**

The FMLA also makes it "unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful" by the FMLA. 29 U.S.C. § 2615(a)(2). This is commonly called the discrimination or retaliation theory of recovery. *Thorneberry*, 403 F.3d at 977. An employer may not consider an employee's use of FMLA leave as a negative factor in making any employment decision. *Darby v. Bratch*, 287 F.3d 673, 679 (8th Cir. 2002). An employee can prove

retaliation with direct or indirect evidence under the *McDonnell Douglas* burden-shifting analysis. *Hite*, 446 F.3d at 865 (discussing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973)).

### A. Direct Evidence

Boddicker generally argues that the evidence discussed in the FMLA interference claim is direct evidence for his FMLA retaliation claim. He provides no other argument as to how this evidence meets the FMLA retaliation direct evidence test other than "[t]he Plaintiff contends that the evidence discussed above is direct evidence that he was discriminated against as the result of his exercise of FMLA rights." Docket 58 at 21. Esurance's position is that "Boddicker has no evidence of direct retaliation." Docket 64 at 12.

In an employment discrimination case, direct evidence is a "smoking gun" and attests to the employer's discriminatory intent. *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 77 (2d Cir. 2001) (citation omitted). It is difficult for an employee to prove employment discrimination with direct evidence. *Johnson v. Minn. Historical Soc'y*, 931 F.2d 1239, 1245 (8th Cir. 1991). Direct evidence must be more than an inference of employment discrimination. *Beshears v. Asbill*, 930 F.2d 1348, 1356 (8th Cir. 1991). Boddicker failed to allege any evidence of direct actions by Esurance that could amount to a "smoking gun" showing that Esurance constructively terminated him.

13

## B. Indirect Evidence

Under the indirect evidence test, the employee must show that he exercised his FMLA rights, that he suffered an adverse employment action, and that there was a causal connection between his exercise of rights and the adverse employment action. *Hite,* 446 F.3d at 865. If the employee meets this prima facie showing, the burden shifts to the employer to show that it had a legitimate, nondiscriminatory reason for its actions. *Id.* The burden then shifts back to the employee to show that the employer's proffered reason is mere pretext. *Id.*

The parties do not dispute that Boddicker exercised his FMLA rights, but they do dispute whether he suffered an adverse employment action. Boddicker claims that Esurance constructively discharged him because he felt pressured to resign.

"Constructive discharge, like any other discharge, is an adverse employment action that will support an action for unlawful retaliation." *West v. Marion Merrell Dow, Inc.*, 54 F.3d 493, 497 (8th Cir. 1995). To prevail on a constructive termination claim, an employee must show: (1) that a reasonable person would have found the working conditions intolerable; and (2) that the employer intended to force the employee to quit. *Brenneman v. Famous Dave's of Am., Inc.*, 507 F.3d 1139, 1144 (8th Cir. 2007) (citing *Tatum v. Ark. Dep't of Health*, 411 F.3d 955, 960 (8th Cir. 2005)).

Alternatively, if the employee cannot show that the employer intended to force him to quit, the employee "can still prevail if 'the employer . . . could have reasonably foreseen that the employee would [quit] as a result of its actions.'" *Id.* (quoting *Wright v. Rolette Cnty.*, 417 F.3d 879, 886 (8th Cir. 2005)).

Under either of the alternatives, an employee has "an obligation not to assume the worst and not to jump to conclusions too quickly. An employee who quits without giving his employer a reasonable chance to work out a problem has not been constructively discharged." *Duncan v. Gen. Motors Corp.*, 300 F.3d 928, 935 (8th Cir. 2002) (quoting *Summit v. S-B Power Tool*, 121 F.3d 416, 421 (8th Cir. 1997)); *see also Davis v. KARK-TV, Inc.*, 421 F.3d 699, 706 (8th Cir. 2005) (requiring an employee to work out his problems with his employer before he quits). Constructive discharge is a high evidentiary bar. *O'Brien v. Dep't of Agric.*, 532 F.3d 805, 810-11 (8th Cir. 2008); *Carpenter v. Con-Way Cent. Express, Inc.*, 481 F.3d 611, 616 (8th Cir. 2007).

There is no evidence in the record that Boddicker ever indicated to Esurance that he felt pressured to resign or that Esurance could have reasonably foreseen that Boddicker would quit because of Esurance's actions. Before filing this lawsuit, Boddicker never complained to any manager at Esurance that he disagreed with the call-in policy or any

comments made by his supervisor to him about taking FMLA leave. When Simpson called to ask Boddicker if he intended to resign, Boddicker only answered "no" and never informed Esurance that he felt pressured to resign. Because Boddicker failed to give Esurance a reasonable opportunity to address his concerns before he quit, his constructive discharge claim fails. Consequently, Boddicker has not met his prima facie burden and summary judgment in favor of Esurance is granted on the FMLA retaliation claim.

II. **Uniformed Services Employment and Reemployment Rights Act**

Boddicker does not resist Esurance's summary judgment motion on the USERRA claim. Docket 58 at 24. Thus, summary judgment is granted to Esurance on Boddicker's USERRA claim.

III. **Consolidated Omnibus Budget Reconciliation Act**

Boddicker alleges a claim under COBRA that he did not receive notice that he could extend his employer-provided health coverage. Under COBRA, employees should receive a notification about their COBRA rights after a qualifying event occurs. 29 U.S.C. § 1166(a)(4)(A). A qualifying event includes an employee's termination. 29 U.S.C. § 1163(a)(2); *see also Chesnut v. Montgomery*, 307 F.3d 698, 700 (8th Cir. 2002) (finding that leaving one job for a better job is a qualifying event). An employer can delegate its COBRA duties to a plan administrator such as an insurance agent or other

16

professional familiar with COBRA. *Chesnut*, 307 F.3d at 730. An administrator means "the person so designated by the terms of the instrument under which the plan is operated." 29 U.S.C. § 1002(16)(A)(I).

If an employer uses an outside plan administrator, the notification process is bifurcated. First, COBRA requires **employers** to notify the plan's administrator when a qualifying event occurs. 29 C.F.R. § 2590.606-2(a) (2008); *see also* Health Care Continuation Coverage; Final Rule, 69 Fed. Reg. 30,084 (May 26, 2004) (to be codified at 29 C.F.R. § 2590) (stating that the rules contained in 29 C.F.R. § 2590.606 apply to COBRA). The employer must maintain a record of this notification. *Stanton v. Larry Fowler Trucking, Inc.*, 52 F.3d 723, 727 (8th Cir. 1995) (overruled on other grounds).

Second, the **plan administrator** has the duty to provide COBRA notice to the employee. *Crotty v. Dakotacare Admin. Servs., Inc.*, 455 F.3d 828, 829 (8th Cir. 2006) (reasoning that COBRA requires "administrators of covered group health plans to notify terminated employees that they have the option of continuing their benefits after their employment ends." (citing 29 U.S.C. §§ 1161(a), 1163, 1166(a)(4))). **Plan administrators** also bear the burden of proving that they provided notice consistent with COBRA's requirements. *Crotty*, 455 F.3d at 830 (citing *Stanton*, 52 F.3d at 728-29).

The first duty is not at issue here. Boddicker does not argue that Esurance failed to send Ceridian notice that his employment ended.

The issue under the second duty is whether Esurance can be held liable for Ceridian's failure to send the COBRA notification to the correct address. The parties disagree about who, among Ceridian, Esurance, and Boddicker, maintained the duty to update Boddicker's address in Ceridian's system. This issue is relevant, however, only if Esurance had a duty to either send out the COBRA notification after a qualifying event occurred, or it had a duty to oversee Ceridian's work as the plan administrator.

As stated above, when an employer utilizes an independent plan administrator, COBRA bifurcates the duty to notify employees of their COBRA rights after a qualifying event occurs. After Esurance notified Ceridian that Boddicker quit, a qualifying event, it met the first COBRA duty. The second COBRA duty belongs to the plan administrator. *Crotty*, 455 F.3d at 829; 29 U.S.C. §§ 1161(a), 1163, 1166(a)(4). As a matter of law, Esurance had no duty to send Boddicker notification of his COBRA rights.

Boddicker, however, argues that Esurance has a duty to follow up with Ceridian and ensure that employees receive their COBRA notices. During discovery, Boddicker received a draft of a letter dated October 16, 2007, from Simpson to Boddicker that contained Boddicker's correct street address in Sioux Falls, South Dakota. Boddicker contends that this letter shows that Ceridian had his correct address because Simpson uses addresses from Ceridian's database when she composes letters. It is

irrelevant if Boddicker provided Ceridian with his updated address, however, because Boddicker seeks damages from Esurance, not Ceridian. COBRA does not require Esurance to oversee Ceridian. Rather, when Esurance delegated its COBRA duties to Ceridian as plan administrator, it was relieved of the second COBRA duty, namely mailing the COBRA rights notification letter to Boddicker.

Boddicker argues that Esurance should be liable because it did not plead as an affirmative defense that Ceridian, not Esurance, was responsible for mailing Boddicker's COBRA notice. Federal Rule of Civil Procedure 8(c)(1) provides a list of affirmative defenses that a defendant must affirmatively plead or those defenses will be waived. Rule 8(c)(1) does not require a defendant to affirmatively plead that the plaintiff sued the wrong party. Instead, because a plaintiff is the master of his complaint, he bears the burden to seek relief from the correct defendant. *BP Chems. Ltd. v. Jiangsu Sopo Corp.*, 285 F.3d 677, 685 (8th Cir. 2002). Consequently, Esurance did not need to plead as an affirmative defense the claim that Boddicker should have sought relief from Ceridian. Accordingly, as a matter of law, Esurance had no duty under COBRA to ensure that Boddicker received his COBRA notification letter, and, therefore, summary judgment in favor of Esurance is granted on the COBRA claim.

## CONCLUSION

Esurance moves for summary judgment on all of Boddicker's claims. Because genuine issues of material fact exist on the FMLA interference claim, summary judgment is denied as to that claim. Summary judgment is granted on the FMLA retaliation claim because no genuine issues of material fact exist. Boddicker agrees that summary judgment is appropriate on his USERRA claim, so summary judgment is granted on that claim. Under the COBRA claim, as a matter of law, Esurance met its COBRA duties and summary judgment is granted on that claim. Accordingly, it is

ORDERED that the motion for summary judgment (Docket 48) is granted in part and denied in part.

Dated December 15, 2010.

                        BY THE COURT:

                        /s/ *Karen E. Schreier*
                        KAREN E. SCHREIER
                        CHIEF JUDGE