UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | | |
|---|---|---|
| RYAN BODDICKER, | ) | CIV. 09-4027-KES |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | ORDER GRANTING |
| | ) | DEFENDANT'S MOTION FOR |
| ESURANCE INSURANCE | ) | JUDGMENT AS A |
| SERVICES, INC., | ) | MATTER OF LAW |
| | ) | |
| Defendant. | ) | |

Plaintiff, Ryan Boddicker, brought suit against defendant, Esurance

Insurance Services, Inc., alleging violations of the Family and Medical Leave

Act (FMLA), the Uniformed Services Employment and Reemployment Rights

Act (USERRA), and the Consolidated Omnibus Budget Reconciliation Act

(COBRA). The court granted summary judgment in favor of Esurance on

Boddicker's FMLA retaliation and USERRA claims, but denied summary

judgment on Boddicker's FMLA interference and COBRA claims. A jury trial

commenced on the FMLA interference claim on March 15, 2011.[1] On March

16, 2011, at the close of Boddicker's case, Esurance moved for judgment as

a matter of law. The court reserved ruling on the motion until the close of

trial. The jury returned a verdict in favor of Boddicker in the amount of

---

[1] The court simultaneously conducted a bench trial on the COBRA claim and heard additional evidence on the COBRA claim at the conclusion of the jury trial. Neither the COBRA claim nor the facts supporting the COBRA claim are at issue in this order.

$2,835.18. Esurance renewed its motion for judgment as a matter of law after the trial. Boddicker resists the motion. The motion is granted.

## BACKGROUND

The pertinent facts to this order, viewed in the light most favorable to the jury's verdict and assuming all conflicts in the evidence were resolved in Boddicker's favor,[2] are as follows:

Boddicker joined the Navy in 1993 and served in active duty until 1997, after which the Navy honorably discharged him. In 2003, Boddicker joined the Naval Reserves. He began working at Esurance's Sioux Falls, South Dakota, branch office as a sales agent on August 9, 2004. The Naval Reserves called Boddicker to active duty in February of 2005. Boddicker served with the Naval Reserves in Kuwait from February 28, 2005, until March 8, 2006.

In Kuwait, Boddicker served as a security guard for a port where all supplies, such as vehicles, equipment, and high-valued assets, were delivered to support the war in Iraq. While guarding a checkpoint, Boddicker experienced a traumatic event. After that event, Boddicker

---

[2] *See Craig Outdoor Adver., Inc. v. Viacom Outdoor, Inc.*, 528 F.3d 1001, 1009 (8th Cir. 2008) (reasoning that, on a motion for judgment as a matter of law, "we 'assume all conflicts in the evidence were in [the plaintiff's] favor, assume [the plaintiff] proved all facts that [his] evidence tended to prove, and give [the plaintiff] the benefit of all favorable inferences that reasonably may be drawn from the proven facts.' " (quoting *Morse v. S. Union Co.*, 174 F.3d 917, 922 (8th Cir. 1999))).

received medical attention in Kuwait and began suffering from post-traumatic stress disorder (PTSD). Boddicker was not recalled to active duty after he finished his tour of duty in Kuwait.[3]

In March of 2006, after finishing his tour of duty, Boddicker returned to Esurance as a sales agent. Seven months later, Boddicker accepted a position as a sales analyst, which was offered to him by Shawn Uhlinger. Uhlinger supervised Jill Horton, who was Boddicker's direct supervisor as a sales analyst. Uhlinger also supervised Boddicker.

Boddicker experienced panic attacks and needed leave from work. He initially did not request FMLA leave but instead took unplanned absences. It is Esurance's policy that every time an employee has three unplanned absences, Esurance disciplines the employee.

Boddicker received several disciplinary warnings regarding his attendance before he requested intermittent FMLA leave. For example, on May 22, 2006, Boddicker received a notice of counseling because he had three unplanned absences from March 31 to May 17. In June of 2006, Boddicker received a written warning for another period of unplanned absences. On February 13, 2007, Boddicker received a second verbal

---

[3] The Naval Reserves honorably discharged Boddicker in 2009. Trial Transcript (Tr.) 274:24-25 to 278:1-2.

3

warning for unplanned absences. On March 30, 2007, Esurance issued a second written warning to Boddicker for unplanned absences.

After receiving the second written warning on March 30, Boddicker discussed his absences with Uhlinger. Boddicker told Uhlinger that he was dealing with some issues related to something that happened during his military service and he was experiencing stress, anxiety, and panic attacks. Uhlinger gave Boddicker the number for Esurance's Employee Assistance Program (EAP) and suggested that he apply for FMLA leave.

Boddicker contacted the EAP office and met with counselor Kriste Hamilton for three counseling sessions. Hamilton indicated on Boddicker's FMLA paperwork that Boddicker suffered from a serious health condition, but she did not note that Boddicker suffered from PTSD. Hamilton stated that Boddicker needed intermittent FMLA leave for his periodic visits to a health care provider and for coping with his medical condition. Boddicker submitted his FMLA leave paperwork, and Esurance granted Boddicker's intermittent FMLA leave request.

Boddicker did not provide Esurance with formal notification of his exact medical condition until June 28, 2007, when he submitted a doctor's note stating that he had PTSD. Trial Exhibit 27 (Ex. 27). Patti Simpson, a human resources supervisor, made the note part of Boddicker's personnel file. Boddicker also noted that he suffered from PTSD on a form dated

August 31, 2007, which he submitted to Esurance for a continuance of his intermittent FMLA leave. Ex. 26.

From April to September of 2007, Boddicker took 16 days of intermittent FMLA leave: April 26; May 1, 2, and 9; June 19, 21, and 25-29; July 3, 18, and 19; August 20-21 and 29-31; September 4-7, 10, 12, 17-21, and 24-28. Esurance did not discipline Boddicker for taking FMLA leave. But Boddicker alleges that Esurance eventually chilled his attempts to exercise his right to take intermittent FMLA leave through, among other actions, Esurance's call-in policy, supervisors' comments, a meeting held on September 14, 2007, and a telephone conversation with Simpson on October 11, 2007.

## STANDARD OF REVIEW

Under Rule 50, a party can move for judgment as a matter of law if the party against whom relief is sought has been fully heard on that issue. Fed. R. Civ. P. 50(a)(1). If the court does not grant the motion, then "the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion." Fed. R. Civ. P. 50(b). In deciding a renewed motion for judgment as a matter of law, the court may enter a judgment on the jury's verdict, order a new trial, or enter judgment on the motion. Fed. R. Civ. P. 50(b)(1)-(3).

"Judgment as a matter of law is appropriate when there is no legally sufficient evidentiary basis for a reasonable jury to find for [the prevailing]

party." *Wash Solutions, Inc. v. PDQ Mfg., Inc.,* 395 F.3d 888, 892 (8th Cir. 2005) (citations omitted). When ruling on a Rule 50 motion, the court gives " 'great deference to the jury's verdict.' " *Howard v. Mo. Bone & Joint Cntr., Inc.,* 615 F.3d 991, 995 (8th Cir. 2010) (quoting *Heaton v. The Weitz Co.,* 534 F.3d 882, 889 (8th Cir. 2008)). " 'Judgment as a matter of law is appropriate only when all of the evidence points one way and is susceptible of no reasonable inference sustaining the position of the nonmoving party.' " *Id.* (quoting *Keenan v. Computer Assocs. Int'l, Inc.,* 13 F.3d 1266, 1269 (8th Cir. 1994)).

While the nonmoving party receives the benefit of all reasonable inferences, he is not accorded " 'the benefit of unreasonable inferences.' " *Hopper v. Hallmark Cards, Inc.,* 87 F.3d 983, 988 (8th Cir. 1996) (quoting *Marcoux v. Van Wyk,* 572 F.2d 651, 653 (8th Cir. 1978)). "A reasonable inference is one 'which may be drawn from the evidence without resort to speculation.' " *Id.* (quoting *Caudill v. Farmland Indus., Inc.,* 919 F.2d 83, 86 (8th Cir. 1990)). "A jury verdict will not be set aside unless 'there is a complete absence of probative facts to support the verdict.' " *Walsh v. Nat'l Computer Sys., Inc.,* 332 F.3d 1150, 1158 (8th Cir. 2003) (quoting *Browning v. President Riverboat Casino-Mo., Inc.,* 139 F.3d 631, 634 (8th Cir. 1998)).

## DISCUSSION

Congress created the FMLA "to balance the demands of the workplace with the needs of families, to promote the stability and economic security of

families" and "to entitle employees to take reasonable leave for medical reasons . . . ." 29 U.S.C. §§ 2601(b)(1), (2). But the FMLA does not impose strict liability on employers. *Throneberry v. McGehee Desha Cnty. Hosp.*, 403 F.3d 972, 979 (8th Cir. 2005). Instead, an employee must allege a claim of either interference or retaliation. 29 U.S.C. §§ 2615(a)(1), (2). Only the FMLA interference theory is at issue here.

Congress codified the FMLA interference theory at 29 U.S.C. § 2615(a)(1): "It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under" the FMLA. *Id.*; *see also Stallings v. Hussmann Corp.*, 447 F.3d 1041, 1050 (8th Cir. 2006) (reasoning that a violation of § 2615(a)(1) " 'creates what is commonly known as the interference theory of recovery.' " (quoting *Throneberry*, 403 F.3d at 977)).

The Department of Labor (DOL) has issued regulations for the FMLA, which provide that "[a]ny violations of the Act or of these regulations constitute interfering with, restraining, or denying the exercise of rights provided by the Act." 29 C.F.R. § 825.220(b). The DOL also defined "interfere" as used in § 2615(a)(1): " 'Interfering with' " the exercise of an employee's rights would include, for example, not only refusing to authorize FMLA leave, but discouraging an employee from using such leave. It would also include manipulation by a covered employer to avoid responsibilities under FMLA . . . ." *Id.*

7

When an employee alleges that an employer discouraged the employee from using FMLA leave, as set forth in 29 C.F.R. § 825.220(b), the Eighth Circuit Court of Appeals has referred to that manner of proof as the "chill" theory of the FMLA interference cause of action. *Stallings*, 447 F.3d at 1050 (citing *Bachelder v. Am. W. Airlines, Inc.*, 259 F.3d 1112, 1124 (9th Cir. 2001)). If an employee shows that his employer chilled the exercise of his FMLA rights, the employee may allege an interference claim: "When an employer attaches negative consequences to the exercise of protected rights, it has 'chilled' the employee's willingness to exercise those rights because he or she does not want to be fired or disciplined for doing so." *Id.* (citing *Bachelder*, 259 F.3d at 1124).

Before its decision in *Quinn v. St. Louis County*, 653 F.3d 745 (8th Cir. 2011), the Eighth Circuit did not always require that an employee be denied FMLA leave before bringing an FMLA interference claim: "Interference includes 'not only refusing to authorize FMLA leave, but *discouraging* an employee from using such leave. It would also include manipulation by a covered employer to avoid responsibilities under FMLA.' " *Wisbey v. City of Lincoln*, 612 F.3d 667, 675 (8th Cir. 2010) (emphasis added) (quoting 29 C.F.R. § 825.220(b)), *abrogated on other grounds by Torgerson v. City of Rochester*, 643 F.3d 1031, 1042-43, 1058 (8th Cir. 2011); *Stallings*, 447 F.3d at 1050 (same); *see also* Docket 74 (describing the Eighth Circuit's use of the chill theory for an FMLA interference claim in detail). In *Quinn*,

8

however, the Eighth Circuit clarified what a plaintiff must prove to succeed on an FMLA interference claim by holding that an employee must show that the employer denied the employee his rights under the FMLA. *Quinn*, 653 F.3d at 753.[4]

In *Quinn*, an employee settled a sexual harassment case with her employer in February of 2007. *Id.* After the settlement, she experienced anxiety and depression at work and took block FMLA leave from May 14, 2007, to August 10, 2007. *Id.* In early 2008, her employer hired, as an employee, the attorney who had represented it in the sexual harassment lawsuit and the attorney became her new supervisor. *Id.* The new supervisor accused her of tardiness, "yelled at her in front of her coworkers during a meeting, indicated that she might not be granted FMLA leave if she requested it, and warned her in writing to report to work on time every day and obtain advance approval for any absence." *Id.* at 749. In March of 2008, Quinn's anxiety and depression increased and she asked for and received an adjusted work schedule of three days per week. *Id.* In early April of 2008, Quinn stopped reporting to work and, instead, used her sick leave until May 14, 2008, when she again became eligible for FMLA leave. *Id.* She used block FMLA leave until August of 2008. *Id.* Her supervisor asked her to

---

[4] *Quinn* was decided after the parties submitted their initial briefs on the motion for judgment as a matter of law. Both parties have provided supplemental briefs discussing whether *Quinn* applies to this case. Dockets 171, 173.

obtain an independent medical examination. *Id.* The independent medical examiner stated that Quinn would never be able to return to work for that employer again. *Id.*

Quinn brought suit against her employer alleging, among other claims, an FMLA interference cause of action. *Id.* The district court granted summary judgment on Quinn's FMLA interference claim. *Id.* at 753. On appeal, Quinn argued "that the district court did not consider the fact that the County discouraged her from taking FMLA leave and refused her requests before approving them." *Id.*

The Eighth Circuit acknowledged its earlier holdings that FMLA interference includes an employer's refusal to authorize FMLA leave, actions by the employer to discourage an employee from using FMLA leave, and manipulation by an employer to avoid its FMLA responsibilities. *Id.* (citing 29 C.F.R. § 825.220(b)). Nonetheless, the court reasoned that "the employee must also show that the employer denied the employee entitlements under the FMLA." *Id.* (citing *Wisbey*, 612 F.3d at 675). Because Quinn acknowledged that "she received the full twelve weeks of FMLA leave to which she was entitled each year she requested it," the court held that "summary judgment was properly granted on Quinn's FMLA interference claim." *Id. Quinn* is binding authority for this court. *See, e.g., Drake v. Scott*, 812 F.2d 395, 400 (8th Cir. 1987) (reasoning that a published panel

decision by the Eighth Circuit Court of Appeals is binding authority until overruled by the court sitting en banc).

Boddicker offered *no* evidence or argument that he was ever denied FMLA leave when he requested it from Esurance. Instead, Boddicker repeatedly testified that he was not denied his FMLA benefits: "Q: . . . This case is not about a denial of benefits. Is it? A: Correct," Tr. 358:15-17; "Q: Now, Miss Uhlinger never told you if you didn't call in by 10:00, you wouldn't be able to take the day off. Did she? A: No. Again, this is not a denial of benefits claim. Q: Did she tell you that or not? A: I just said, no, it's not a denial of benefits claim." Tr. 363:6-11. Boddicker testified that Esurance granted every FMLA request made by him: "Q: Every time you told Esurance you needed leave, Esurance granted you the leave. Right? A: Correct. This is not a denial of benefits claim . . . ." Tr. 358:6-8. Boddicker received all 12 weeks of the FMLA leave to which he was entitled. Tr. 358:12-14 ("Q: To your understanding, you received all 12 weeks of FMLA leave, all the leave you were entitled to. Right? A: Yes."

Uhlinger, one of Boddicker's supervisors, testified that she never denied Boddicker FMLA leave, even when Boddicker failed to follow Esurance's call-in procedures: "Q: Did you personally ever deny Mr. Boddicker FMLA leave when he didn't call in? A: No," Tr. 134:23-25; "Q: What efforts did you make to ever deny Mr. Boddicker time off, if he needed it? . . . A: None." Tr. 193:22-23 to 194:1. Horton, another one of Boddicker's

11

supervisors, similarly testified that she never denied Boddicker his FMLA rights: "Q: What efforts did you take, Miss Horton, to deny Mr. Boddicker any FMLA leave? A: None." Tr. 194:3-5.

In light of *Quinn's* holding that a plaintiff must show that he was denied FMLA benefits to prove an FMLA interference cause of action, Boddicker did not present any facts to show a denial of benefits. Boddicker repeatedly admitted that Esurance never denied him a single FMLA leave request, which is supported by the other evidence showing that Esurance did not deny Boddicker his FMLA benefits. Thus, after the ruling in *Quinn*, there is no legally sufficient basis for a reasonable jury to find for Boddicker.

Boddicker argues that *Quinn* is distinguishable from his case. Boddicker urges the court to follow the DOL's interpretation of interference, which defines interference: " 'Interfering with' the exercise of an employee's rights would include, for example, not only refusing to authorize FMLA leave, but discouraging an employee from using such leave.' " 29 C.F.R. § 825.220(b); *see also* Docket 173 at 2-3 (discussing the DOL's interpretation). While this court agrees with Boddicker's interpretation, the Eighth Circuit does not. The Eighth Circuit cited to 29 C.F.R. § 825.220(b) in *Quinn* and reasoned that "FMLA interference includes 'not only refusing to authorize FMLA leave, but discouraging an employee from using such leave,' as well as 'manipulation by a covered employer to avoid responsibilities under [the] FMLA.' " *Quinn*, 653 F.3d at 753 (alteration in

original) (quoting 29 C.F.R. § 825.220(b)). Even though the DOL's
interpretation contains three disjunctive ways to show FMLA interference,
the Eighth Circuit reviewed this regulation and held that a plaintiff must
show that he was denied FMLA benefits to recover under an FMLA
interference theory.

Boddicker also contends that *Quinn* is factually distinguishable from
this case because Esurance interfered with Boddicker's right to take FMLA
*intermittent* leave while the employee in *Quinn* requested FMLA *block* leave.
Docket 173 at 3 ("Ryan has proven that he was denied the ability to
continue taking FMLA leave into the future intermittently because of
Esurance's actions. . . . Had Esurance not interfered with Ryan's right to
take intermittent FMLA leave, he would not have been forced to take the
FMLA leave that he did and he would have continued to take intermittent
FMLA leave into the future.").

The FMLA grants three types of leave to an employee with a serious
health condition: (1) block leave; (2) intermittent leave; and (3) a reduced
leave schedule. *Hoffman v. Prof. Med Team*, 394 F.3d 414, 418 (6th Cir.
2005) (citing 29 U.S.C. §§ 2612(a)(1), 2611(9); 29 C.F.R. §§ 825.800,
825.203); *see also Hatchett v. Philander Smith Coll.*, 251 F.3d 670, 676-77
(8th Cir. 2001) ("In addition to full-time leave, an employee may take
intermittent or part-time leave when medically necessary." (citing 29 U.S.C.
§ 2612(b)(1))). Block FMLA leave is "one block of leave of twelve weeks or

13

fewer . . . .” *Hoffman*, 394 F.3d at 418. If the employee elects not to take block FMLA leave, then “FMLA leave may be taken ‘intermittently or on a reduced leave schedule’ under certain circumstances. Intermittent leave is FMLA leave taken in separate blocks of time due to a single qualifying reason.” 29 C.F.R. § 825.202(a).

The Eighth Circuit has not differentiated between intermittent leave and block leave with regard to FMLA interference causes of action. *Quinn* relied on *Wisbey v. City of Lincoln*, 612 F.3d 667, 669 (8th Cir. 2010), which held that an employee who received intermittent leave whenever she requested it could not sustain an FMLA interference cause of action because she “has not shown that she was entitled to any benefit that was denied.” *Wisbey*, 612 F.3d at 675 (citing *Stallings*, 447 F.3d at 1050-51). The Eighth Circuit further reasoned that “[i]n *Stallings*, we held that a retaliation claim, and not a interference claim, existed when the employer ‘granted every request [the employee] made to take FMLA leave,’ and the employee had failed to establish that the employer had ‘denied him a benefit to which he was entitled because he received all of the FMLA leave he requested.’ ” *Id.* (quoting *Stallings*, 447 F.3d at 1051). Boddicker’s attempt to differentiate his case from *Quinn* because his case involves intermittent FMLA leave is unpersuasive.

## CONCLUSION

14

Boddicker proceeded to a jury trial on his FMLA interference cause of action against Esurance. The jury returned a verdict in favor of Boddicker in the amount of $2,835.18. At the close of Boddicker's case and again at the end of the trial, Esurance moved for judgment as a matter of law. Because all the evidence points toward a finding that Esurance did not deny Boddicker his FMLA rights, there was no legally sufficient basis for a reasonable jury to find for Boddicker on his FMLA interference claim. Accordingly, it is

ORDERED that defendant's motion for judgment as a matter of law (Docket 146) is granted. Judgment will be entered in favor of Esurance on the FMLA interference claim.

Dated December 20, 2011.

BY THE COURT:

/s/ *Karen E. Schreier*

KAREN E. SCHREIER
CHIEF JUDGE